IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KIMBERLY MCCAIN,               )
                               )
            Plaintiff,         )
                               )
    v.                         )        1:15CV99
                               )
CAROLYN W. COLVIN,             )
Acting Commissioner of         )
Social Security,               )
                               )
            Defendant.         )


**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

Plaintiff, Kimberly McCain, brought this action on behalf
of her minor child, J.B., pursuant to Section 1631(c)(3) of the
Social Security Act (the "Act"), codified as amended at 42
U.S.C. § 1383(c)(3), to obtain review of a final decision of the
Commissioner of Social Security ("Commissioner") denying her
claim for Supplemental Security Income ("SSI") under Title XVI
of the Act.

Presently before this court are Plaintiff's Motion for
Judgment on the Pleadings and accompanying memorandum (Docs.
8, 9), and the Commissioner's Motion for Judgment on the
Pleadings and accompanying memorandum (Docs. 11, 12).  Plaintiff
filed a response to the Commissioner's Motion.  (Doc. 13.)  This

court also has before it the certified administrative record,[1] and this matter is now ripe for adjudication. After a careful consideration of the evidence of record, the decision of the Administrative Law Judge ("ALJ"), and the governing legal standard, this court concludes that remand is proper.

## I.   BACKGROUND

Plaintiff filed an application for SSI in September 2011, alleging a disability onset date of August 10, 2011, for J.B., her daughter who was born in February 2005. (Tr. at 171-200, 192.) The application was denied initially and upon reconsideration. (Id. at 61-100, 103-120.) Plaintiff then requested a hearing before an ALJ. (Id. at 121-122.) Plaintiff, her counsel, and J.B. were present at the July 1, 2013 hearing. (Id. at 39-60.) After the hearing, on August 27, 2013, the ALJ determined that J.B. was not disabled. (Id. at 13-38.)

More specifically, the ALJ concluded (1) that J.B. had not engaged in "substantial gainful activity" during the relevant period and (2) that J.B.'s disruptive behavior disorder, attention deficit hyperactivity disorder, bipolar I disorder, speech and language delay, and asthma were severe impairments.

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 6.)

-2-

(Id. at 19.)  However, the ALJ concluded that the disorders did
not meet or equal a listed impairment.  (Id. at 19-20.)  The ALJ
then determined that J.B. did not have an impairment or
combination of impairments that functionally equaled the
severity of the listings.  (Id. at 20.)  Next, in concluding
that J.B.'s impairments did not functionally equal a listing,
the ALJ found less than marked limitations in acquiring and
using information, in attending and completing tasks, in
interacting and relating with others, in caring for herself, and
in her health and physical well-being.  (Tr. at 27-38.)  The ALJ
further found that J.B. had no limitation in moving about and
manipulating objects.  (Id. at 34-35.)  Consequently, the ALJ
concluded that J.B. was not disabled.  (Id. at 38.)

Plaintiff requested that the Appeals Council review the
ALJ's decision and, on November 24, 2014, the Appeals Council
denied Plaintiff's request for review, making the ALJ's
determination the Commissioner's final decision for purposes of
review.  (Id. at 1-5.)

## II.  LEGAL STANDARD

Federal law authorizes judicial review of the
Commissioner's denial of social security benefits. 42 U.S.C.
§ 405(g); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).
However, the scope of review of such a decision is "extremely
limited."  Fray v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

-3-

"The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "[a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citation omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" Hunter, 993 F.2d at 34.

"In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (citation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Hancock, 667 F.3d at 472 (citation omitted).

"A claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981) (citations omitted), and a child under the age of eighteen qualifies as disabled if that individual has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. The ALJ must follow a three-step sequential evaluation process to consider whether a claimant (1) has engaged in substantial gainful activity; (2) has a severe impairment; and (3) has an impairment that either meets or medically or functionally equals a listed impairment.  See 20 C.F.R. § 416.924.

## III. **PLAINTIFF'S ASSERTIONS OF ERROR**

Plaintiff asks this court to reverse the decision of the Commissioner and, in support, she makes several arguments. First, Plaintiff contends that "the ALJ erred in not finding that J.B.'s mild mental retardation meets the requirements of Listing 112.05D[.]"  (Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings ("Pl.'s Mem.") (Doc. 9) at 1, 6-9.)  Second, Plaintiff contends that "the ALJ erred in concluding that J.B. had a 'less than marked' limitation in the domains of acquiring and using information and attending and

-5-

completing tasks[.]" (Id. at 2, 9-11.) For the reasons explained below, remand is in order.

**IV. <u>ANALYSIS</u>**

Plaintiff first contends that the ALJ materially erred in her analysis of Listing 112.05D. (See id. at 6.) "For a claimant to show that [her] impairment matches a listing, it must meet <u>all</u> of the specified medical criteria." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990). It is not enough to have the diagnosis of a listed impairment; rather, the claimant must also meet the criteria found in the listing of that impairment. 20 C.F.R. § 416.925(d); <u>see</u> 20 C.F.R. § 416.924(a), (e); <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987) (noting that the burden is on the claimant to establish that his impairment is disabling); <u>Hunter</u>, 993 F.2d at 34-35 ("Through the fourth step, the burden of production and proof is on the claimant.").

The ALJ is required to identify the relevant listed impairments and compare each of the listed criteria to the evidence of the claimant's symptoms. <u>See</u> <u>Cook v. Heckler</u>, 783 F.2d 1168, 1172-73 (4th Cir. 1986). Yet, this is not "an inflexible rule requiring an exhaustive point-by-point discussion in all cases." <u>Russell v. Chater</u>, No. 94-2371, 1995 WL 417576, at *3 (4th Cir. July 7, 1995). "Meaningful review may [still] be possible . . . where the ALJ discusses in detail the evidence presented and adequately explains

-6-

[herself] . . . ." <u>Johnson v. Astrue</u>, No. 5:08–CV–515–FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009) (collecting cases). In fact, a court may look to other steps for substantial evidence. <u>See, e.g.</u>, <u>Smith v. Astrue</u>, 457 F. App'x 326, 328 (4th Cir. 2011); <u>McCartney v. Apfel</u>, 28 F. App'x 277, 279–80 (4th Cir. 2002).

**A.   The ALJ's Listing 112.05D Analysis Is Not Susceptible to Judicial Review.**

The particular listing at issue here, Listing 112.05D, is included under the section dealing with "Mental Disorders" and sets forth the following requirements:

> 112.05 Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
> The required level of severity for this [disorder] is met when the requirements in A, B, C, D, E, or F are satisfied.
>
>                     . . . .
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an [additional] and significant limitation of function . . . .

-7-

20 C.F.R. pt. 404, subpt. P, app. 1, § 112.05D (2013).[2]

In determining that a claimant meets Listing 112.05D, an ALJ must find that the claimant meets four requirements: two in the introductory paragraph (that is, significantly subaverage general intellectual functioning and deficits in adaptive functioning) and two in subsection D (that is, a valid IQ score between 60 and 70 and a physical or other mental impairment imposing an additional and significant limitation of function). See id., Barnett v. Comm'r of Soc. Sec., 573 F. App'x 461, 462–63 (6th Cir. 2014); cf. Hancock, 667 F.3d at 473.

The ALJ did not mention Listing 112.05D in her decision. Nevertheless, at step two, the ALJ made two of four findings relevant to a Listing 112.05D inquiry. Specifically, the ALJ stated:

> The evidence further showed the claimant had a diagnosis of mild mental retardation, however, a review of her IQ scores showed her scores were significantly varied. In January 2011, the claimant's full-scale IQ was in the low average range at 87; and in November 2012, the claimant's full-scale IQ was in the extremely low average range at 68. (Exs. 5F, 14F) These scores do not support a diagnosis of mild mental

---

[2] Effective September 3, 2013, the agency changed the terminology in Listing 112.05D from "Mental Retardation" to "Intellectual Disability." Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46,499–501 (Aug. 1, 2013) (codified at 20 C.F.R. pts. 404 and 416). This change became effective after the ALJ's August 27, 2013 decision. (See Tr. at 38.) Accordingly, the court will rely on the Listing's terminology as it existed at the time of the ALJ's decision.

retardation; in addition, the record does not support
the requisite deficits in adaptive functioning. (Ex.
17F).

(Tr. at 19.)

Based on this section of her decision, it is reasonable to
conclude that the ALJ considered listing 112.05D, at least in
part, given that she mentioned J.B.'s IQ scores and mentioned
J.B.'s adaptive functioning, both of which are necessary
inquiries for a Listing 112.05D analysis. The question is
whether these findings were legally correct and supported by
substantial evidence. As explained below, however, this court
cannot evaluate these findings to determine if they are
supported by substantial evidence because they are not
susceptible to judicial review.

### i.   A Valid IQ Score Between 60 and 70

First, the ALJ's assessment of J.B.'s IQ scores is not
susceptible to judicial review. The record contains two bundles
of IQ results. J.B.'s November 2012 IQ scores included a full
scale IQ of 68, a verbal comprehension score of 73, and a
perceptual reasoning score of 65. (Tr. at 546.) These scores
were lower than the intelligence testing results in January
2011, which showed that J.B. possessed at least low average
intelligence with a verbal IQ of 86, a performance IQ of 86, and
a full-scale IQ of 87. (Id. at 453, 455.) Consequently, there
is at least one IQ score on record between 60-70, which, if

-9-

valid, meets the first prong of Listing 112.05D.  However, here,
the ALJ fails to indicate whether any of the IQ scores are
valid.  This failure constitutes prejudicial error because it
prevents the court from reviewing the ALJ's Listing 112.05D
analysis.[3]

It could be the case that the ALJ implicitly discounted the
lower of the two sets of scores.  However, it is the obligation
of the ALJ to make her analysis clear enough to permit judicial

---

[3] See, e.g., Easley ex rel. P.S.J. v. Colvin, No. 13-CV-
923S, 2014 WL 5465411, at *4 (W.D.N.Y. Oct. 28, 2014) ("Although
the ALJ acknowledged that PJB's intelligence was evaluated
twice, resulting in one full scale IQ falling within the 60
through 70 range, and one falling just above the range, he did
not attempt to reconcile these scores, nor did he make a finding
as to whether PSJ met the first prong of 112.05(D). To the
extent the ALJ did consider this specific Listing, the decision
does not provide an analysis of PSJ's impairments that is
sufficient to enable this Court to conclude the finding is
supported by substantial evidence. On remand, if the ALJ
determines Listing 112.05(D) is not satisfied, he should explain
why PSJ's IQ score(s), coupled with her learning disorder, ADHD,
and behavior disorder, do not meet the criteria for this
Listing."); Salem v. Colvin, No. 5:12-CV-1441 (MAD/VEB), 2014 WL
975696, at *7 (N.D.N.Y. Mar. 12, 2014) ("[T]he Commissioner
should provide further analysis regarding which IQ scores (if
any) should not be considered 'valid' and, if certain scores are
found invalid, make specific findings as to why the lowest
scores should not be accepted as controlling."); Coogan v.
Astrue, Civ. No. 08-1387 (RMB), 2009 WL 512442, at *5 (D.N.J.
Feb. 27, 2009)(concluding that ALJ's conclusion that "the record
contains multiple IQ tests reflecting different degrees of
intellectual functioning" was inadequate to determine "whether
or not the claimant has a valid verbal, performance, or full
scale IQ of 60 through 70" (citation omitted)); Vazquez ex rel.
Jorge v. Barnhart, 2005 WL 2429488, at *8 (S.D.N.Y.
Sept. 30, 2005) ("As Jorge has multiple IQ scores both below and
above 70, it is for the ALJ to reconcile these scores.").

review. It is not the task of this court to presume that, by pointing to the variability in the IQ scores on record, the ALJ intended to discount the lower of the two sets and that she had an acceptable reason for doing so.[4]  Therefore, while the parties both raise arguments as to why Plaintiff's IQ scores are either valid or invalid, the court declines to make findings on this issue as a matter of first impression.  (See Pl.'s Mem. (Doc. 9) at 8-9, Memorandum in Support of the Commissioner's Motion for Judgment on the Pleadings (Doc. 12) at 8.)  Because the ALJ left the court to speculate as to whether the IQ element of a Listing 112.05D analysis is met, it erred and this error prevents the court from reviewing this finding.[5]

---

[4] See, e.g., Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." (citing King v. Califano, 615 F.2d 1018 (4th Cir. 1980))).

[5] There is also case law suggesting that courts tend to prefer the lowest IQ score across multiple valid tests.  See Coogan, 2009 WL 512442, at *6 n.2 (stating that "it is not the ALJ's task to decide which . . . IQ score[] he prefers, as Listing 12.05(C) requires only one valid score in the applicable range"); Ray v. Chater, 934 F. Supp. 347, 350 (N.D. Cal. 1996) (inferring that the regulations prefer the lowest score amongst multiple tests). Although this court notes these cases, this court is not at this point suggesting that the lowest score should control or that the ALJ is required to make such a finding. Instead, this court makes this observation to point out why the ALJ's finding in the first instance is necessary.

### ii. Subaverage General Intellectual Functioning with Deficits in Adaptive Functioning

As noted, subaverage general intellectual functioning with deficits in adaptive functioning are additional elements of a Listing 112.05D analysis.[6] See Barnett, 573 F. App'x at 462-63. Here, the ALJ found that "the record does not support the requisite deficits in adaptive functioning." (Tr. at 19.) This conclusory finding is not susceptible to judicial review.

### 1. Adaptive Functioning

More specifically, adaptive functioning is described as:

> "refer[ing] to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM-IV at 42. "Adaptive functioning" includes the plaintiff's "effectiveness in areas such as social skills, communication, and daily living skills." West v. Comm'r Soc. Sec. Admin., 240 F. App'x 692, 698 (6th Cir. 2007) (citing Heller v. Doe by Doe, 509 U.S. 312, 329 (1993)). Mental retardation requires concurrent deficits or impairments in present adaptive functioning in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. DSM-IV at 49.

---

[6] Some courts consider subaverage general intellectual functioning and deficits in adaptive functioning separate and distinct elements, Barnett, 573 F. App'x at 462-63, while others treat them as a single element, Washington v. Colvin, No. 1:12-CV-00802-SKO, 2013 WL 4517911, at *6 (E.D. Cal. Aug. 26, 2013). The distinction, if there is one, is immaterial here, because the ALJ's decision is not susceptible to judicial review regardless of how they are characterized.

-12-

Craig v. Comm'r of Soc. Sec., No. 1:14-CV-966, 2015 WL 8207480, at *16 (S.D. Ohio Dec. 7, 2015), adopted by No. 1:14-CV-966, 2016 WL 108072 (S.D. Ohio Jan. 11, 2016).

Likewise, the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders describes deficits in adaptive functioning similarly:

> Deficits in adaptive functioning . . . refer to how well a person meets community standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background. Adaptive functioning involves adaptive reasoning in three domains: conceptual, social, and practical. The conceptual (academic) domain involves competence in memory, language, reading, writing, math reasoning, acquisition of practical knowledge, problem solving, and judgment in novel situations, among others. The social domain involves awareness of others' thoughts, feelings, and experiences; empathy; interpersonal communication skills; friendship abilities; and social judgment, among others. The practical domain involves learning and self-management across life settings, including personal care, job responsibilities, money management, recreation, self-management of behavior, and school and work task organization, among others. Intellectual capacity, education, motivation, socialization, personality features, vocational opportunity, cultural experience, and coexisting general medical conditions or mental disorders influence adaptive functioning.

Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 37 (5th ed. 2013). As a court in this district has explained at length elsewhere in the analogous context of adult deficits in adaptive functioning, "whether a claimant manifested deficits in adaptive functioning" "is a fact-specific inquiry with few bright-line rules." Nichols v. Colvin, No. 1:14CV536,

-13-

2015 WL 4656484, at *5 (M.D.N.C. Aug. 5, 2015), <u>adopted by</u> slip op. (M.D.N.C. Aug. 26, 2015).

Here, in support of her determination that J.B. lacked deficits in adaptive functioning sufficient to meet listing 112.05D, the ALJ cited to treatment notes from Duke University Medical Center dating from March 2012 through May 2013. (<u>See</u> Tr. at 19-38, 592-619.) According to these notes, however, on March 11, 2013, J.B.'s diagnosis and symptoms included a diagnosis of "Mild Mental Retardation" and symptoms including "deficits in communication[;] deficits in functional academic skills[;] deficits in safety[;] deficits in self-care[;] deficits in self-direction[;] deficits in social/interpersonal skills[;] [and] deficits in work[.]" (<u>Id.</u> at 597-98.) Consequently, in support of her conclusion that the record did not support a finding of deficits in adaptive functioning, the ALJ pointed to at least <u>some</u> evidence of those deficits.

It is not clear to this court why the ALJ did this. Perhaps the ALJ merely intended to point to the diagnosis of mild mental retardation. It is also possible that the ALJ simply overlooked the reference to deficits in adaptive functioning.

Alternatively, perhaps the ALJ saw the reference to deficits in adaptive functioning but concluded that a single reference to such deficits was insufficient to satisfy that

-14-

element of a Listing 112.05D analysis.[7]  Or perhaps there is some

other unarticulated reason as to why the ALJ pointed to this

evidence which the court has been unable to discern.  In any

event, what the court finds disconcerting here is the fact that

it is left to speculate as to the ALJ's underlying rationale as

to why this element of a Listing 112.05D analysis was not

satisfied.[8]

The court's concern is compounded considerably by other

significant omissions by the ALJ in her conclusory adaptive

---

[7] Even this conclusion would be potentially troubling.  The
ALJ's decision to rely solely on this set of treatment notes,
twenty-eight pages of a more than 600-page record, when the
record contains considerable additional evidence on the issue of
deficits of adaptive functioning, does not render the decision
susceptible to judicial review.  While it is true that an "ALJ's
subsequent discussion of the record in connection with [a]
domain analysis [can] make[ ] clear for purposes of judicial
review that substantial evidence supports the ALJ's finding at
step three," Picott ex rel. D.P. v. Colvin, No. 1:10CV710, 2014
WL 222095, at *5 (M.D.N.C. Jan. 21, 2014), adopted by slip op.
(M.D.N.C. Mar. 16, 2014), the domain analysis set forth in the
remainder of the ALJ's decision — as discussed elsewhere herein
— does not chart a sufficiently logical path through the record
to assuage the court's concerns addressed herein.

[8] See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-
40 (4th Cir. 1997) (concluding that before a court can determine
whether a decision is supported by substantial evidence, it must
ascertain whether the Commissioner has considered all relevant
evidence and sufficiently explained the weight given to probative
evidence); DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983)
("Judicial review of an administrative decision is impossible
without an adequate explanation of that decision by the
administrator."); Nichols, 2015 WL 4656484, at *7 ("The ALJ's
truncated assessment of the record on [the issue of adaptive
functioning] is simply too vague to permit judicial review.").

functioning assessment.  Specifically, the ALJ failed to

evaluate, discuss, and reconcile with other evidence the results

of various assessments, such as the Adaptive Behavior Assessment

System, Second Edition (ABAS-II) and the Behavioral Assessment

System for Children, Second Edition (BASC-2), that appear

relevant as to whether J.B. suffered from deficits in adaptive

functioning.

The results of both assessments are set forth and

interpreted in a November 2012 "Confidential Psycho-Educational

Evaluation" prepared by a school psychologist, which explained

that J.B.:

> is a 7-year-old student currently attending 1st grade
> at North Elementary School in the Person County School
> District, NC.  [J.B.] has received Exceptional
> Children's (EC) services under the classification of a
> student with Developmental Delays (DD).  The purpose
> of the evaluation is to determine [J.B.'s] current
> level of cognitive, academic, social/emotional/
> behavioral, and adaptive behavioral functioning in
> order to establish how they might affect her current
> classroom performance.

(Tr. at 545 (emphasis added).)

Although the ALJ did not discuss this evidence in her one-

line evaluation of J.B.'s adaptive functioning, she did not omit

a description of it altogether.  Instead, the ALJ described this

evidence in her domain analysis for acquiring and using

information.  (See id. at 29.)  Even here, however, the ALJ did

not explain the impact of these assessments, or the school

-16-

psychologist's interpretation of these assessments,[9] in regards to her Listing 112.05D analysis. Nor did the ALJ reconcile this evidence with other evidence on record. Instead, the ALJ engaged in a lengthy description of the evidence in question, stating:

> The claimant's mother's and teacher's responses on the Adaptive Behavior Assessment System-Second Edition (ABAS-II), reflected the claimant's overall adaptive behavior skills fell below those of the majority of her similar peers in both settings. While the claimant's mother perceived the claimant's composite adaptive [s]kills to be similarly weak across the board, the claimant's teacher described the claimant's conceptual adaptive skills as particularly weak and her practical adaptive skills to be a personal strength. The claimant's functional academic and self-direction skills were described as being particularly weak in a school setting. Both raters also observed a personal weakness in communication skills. Although they described the claimant as generally capable of independently performing most age-appropriate tasks, the claimant reportedly did not

_____

[9] School psychologists are acceptable medical sources for purposes of establishing impairments of intellectual disability, learning disabilities, and borderline intellectual functioning. 20 C.F.R. § 416.913(a)(2). And, even if a school psychologist were an "other source[]" and not an "acceptable medical source[][,]" the weight given (or not given) to their opinion should still be explained. SSR 06-03P, 2006 WL 2329939, at *4, 6 (August 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."); see, e.g., Lucero ex rel. J.L. v. Astrue, 781 F. Supp. 2d 1119, 1125 (D. Colo. 2011). In any event, simply describing material evidence on the record (like the evidence described above) without explaining how it relates to a claimant's alleged impairments is tantamount to ignoring it. See Sterling Smokeless Coal Co., 131 F.3d at 439-40; DeLoatche, 715 F.2d at 150.

-17-

often display the behaviors when necessary and/or required prompting to complete many tasks. As described by the claimant's mother and teacher's responses on the BASC-2, the claimant demonstrated elevated levels of hyperactivity, often being restless and overactive. She engaged in more rule-breaking behavior in the school setting than is typical of her similar-aged peers and demonstrated difficulty maintaining appropriate levels of attention. The claimant frequently engaged in behaviors that are considered strange or odd, and she generally seemed disconnected from her surroundings. <u>The claimant also demonstrated deficits with social skills, leadership, activities of daily living, and functional communication adaptive skills.</u> Her teacher also reported concerns with the claimant's study skills and described that she demonstrated academic difficulties in a variety of areas.

(Tr. at 29-30 (emphasis added) (citing Tr. at 545-52).)

The problem here is that, at least facially, the evidence the ALJ describes appears to support a conclusion that J.B. suffered from, at the very least, <u>some</u> deficits in adaptive functioning. This does not mean that the record compelled a conclusion that such deficits were present to the extent that the deficits of adaptive functioning prong of Listing 112.05D was necessarily met. However, these assessment results and the evaluation of the school psychologist, at the very least, trigger the ALJ's duty to reconcile this evidence with the remainder of the record and to provide a corresponding explanation as to whether the deficits of adaptive functioning prong of Listing 112.05D is met. The ALJ's conclusory statement that "the record does not support the requisite deficits in

-18-

adaptive functioning[]" is inadequate in this regard. (<u>Id.</u> at 19.)

These omissions are noteworthy for another reason. Specifically, the record suggests that it was, in part, the results of these particular assessments that led J.B.'s school to label her as intellectually disabled. (<u>See id.</u> at 554 ("Eligibility category is being changed from <u>Developmental Delay</u> to <u>Intellectual Disability – Mild</u>"), 567 (J.B. "seems to need greater guidance and assistance from others with daily activities. [J.B.] also demonstrates an elevated level of hyper activity. She also frequently engages in behaviors that are considered strange or odd, she generally seems disconnected from her surroundings. [J.B.] also demonstrates deficits with social skills and functional communication adaptive skills."); <u>see also id.</u> at 573 (J.B. "demonstrates deficits with social skills and functional communication adaptive skills[]").) Because the ALJ did not evaluate this evidence, reconcile it with other conflicting evidence, and include an explanation as to why it did or did not support a finding of deficits in adaptive functioning, her decision on this particular element of Listing 112.05D is not susceptible to judicial review. While the ALJ does not have a duty to engage in such an analysis with every bit of evidence on record, she does have such an obligation to do so with material, and potentially outcome-dispositive, parts

-19-

of the record.[10]

Nor is this a case where the conclusions of a non-examining
state agency consultant might shed some light as to whether a
particular listing is met. See, e.g., Massey v. Colvin, No.
1:13CV965, 2015 WL 3827574, at *3 (M.D.N.C. June 19, 2015),
adopted by slip op. (M.D.N.C. Aug. 13, 2015). No non-examining
state agency consultant in this case considered Listing 112.05D
in an analysis of the record. (Tr. at 26-27, 66, 76, 89.)
Consequently, it cannot reasonably be contended that the ALJ's
decision to afford some weight to the opinion of a non-examining
state agency consultant adds meaningful clarity to her Listing
112.05D analysis. (Id. at 26-27.) For all these reasons, the
court concludes that the ALJ's adaptive functioning analysis is
not susceptible to judicial review.

**2.    Subaverage General Intellectual Functioning**

As noted, in evaluating Listing 112.05D, an ALJ must also
consider whether a claimant demonstrates subaverage general
intellectual functioning. See Barnett, 573 F. App'x at 462–63.
Here, the ALJ's Listing 112.05D analysis does not address this
element and so the ALJ's decision is not susceptible to judicial

---

[10] See, e.g., Payne v. Barnhart, 366 F. Supp. 2d 391, 402
(W.D. Va. 2005) (finding error, in part because "while the ALJ
discussed the findings of [state agency consulting] psychologist
Wyatt, she neglected to state, or even hint, whether she was
accepting or rejecting it[]").

-20-

review. (Tr. at 19.) Moreover, the ALJ's failure to adequately address and reconcile J.B.'s IQ scores also makes it difficult for the court to assess the ALJ's partial Listing 112.05D analysis on this element. This is because a valid IQ score may be relevant, if not necessarily dispositive, in an analysis of intellectual functioning. See, e.g., Barnett, 573 F. App'x at 463-64 ("[A]n ALJ may consult IQ scores in evaluating intellectual functioning.").

Beyond this, the court notes that J.B.'s January 2013 individualized education plan ("IEP") determined she would receive special education services under the category of "Intellectual Disability – Mild," instead of her former category of "Developmental[ly] Delay[ed]." (Tr. at 554-56.) J.B. was provided 120 minutes of instruction five days a week in the "Exceptional Children['s] Classroom." (Id. at 393.) Although almost eight years old at the time, J.B., who had previously repeated kindergarten, was reading at a "middle of kindergarten" level. (Id. at 378, 404, 406.) At the end of the 2012-2013 school year, her reading had not improved. (Id. at 403.) Although promoted to second grade, her first grade teacher noted in her fourth quarter grades that J.B. was "demonstrating understanding of 1st grade skills and concepts far below grade level expectations." (Id.)

None of this necessarily means that the ALJ was compelled

-21-

to find that J.B. demonstrated subaverage general intellectual functioning. Nevertheless, there is sufficient evidence on record to trigger the ALJ's duty of explanation as to why J.B. did or did not satisfy the elements of Listing 112.05D, including the element of subaverage general intellectual functioning. By not offering any such explanation, the ALJ erred. This error is prejudicial because it also stymies substantial evidence review.

### iii. **An Additional Impairment**

As explained earlier, a Listing 112.05D analysis also requires a physical or other mental impairment imposing an additional and significant limitation of function. See Barnett, 573 F. App'x at 462–63. To come within that final prong of Listing 112.05D, such "physical or other mental impairment[s]," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.05(D), must constitute "'severe' impairment(s), as defined in § 416.924(c)," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(A). Under that cross-referenced section, an impairment (or impairments) must represent more than "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations[.]" 20 C.F.R. § 416.924(c); see Jones ex rel. B.J. v. Astrue, No. 1:09CV45, 2012 WL 1267875, at *5 (M.D.N.C. Apr. 16, 2012).

In this case, the ALJ specifically found that J.B. had a

-22-

number of additional severe impairments, including disruptive

behavioral disorder, attention deficit hyperactivity disorder,

bipolar I disorder, speech and language delay, and asthma.  (Tr.

at 19.)  Consequently, although the ALJ did not mention these

impairments in her Listing 112.05D analysis, this particular

prong is clearly met.  See, e.g., Washington, 2013 WL 4517911,

at *9 ("While the Commissioner asserts that Plaintiff does not

have a physical or mental impairment other than mental

retardation imposing any additional and significant limitations

of function, the ALJ's finding of additional severe impairments

including ADHD and a learning disability belies this

argument.").

## V.   CONCLUSION

In sum, the ALJ's Listing 112.05D analysis here is not

susceptible to judicial review.  In pertinent part, the ALJ

failed to reconcile conflicting IQ scores and failed further to

evaluate, explain, and reconcile conflicting evidence of

subaverage general intellectual functioning and deficits in

adaptive functioning.  None of this is to say that J.B. is

necessarily disabled under 112.05D or even disabled at all.

Nevertheless, upon remand, the ALJ should take into

consideration the evidence relevant to 112.05D and chart a

logical path between her factual findings and legal conclusions

that is susceptible to judicial review.  See Clifford v. Apfel,

-23-

227 F.3d 863, 872 (7th Cir. 2000) (ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion" (citations omitted)).

Finally, at this time the court declines consideration of any additional issues Plaintiff intended to raise in her pleadings. Hancock v. Barnhart, 206 F. Supp. 2d 757, 763 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision as no preclusive effect, as it is vacated and the new hearing is conducted de novo).

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is not supported by substantial evidence. **IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **REVERSED** and that the matter is **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's Motion for Judgment on the Pleadings (Doc. 8) is **GRANTED** and Defendant's Motion for Judgment on the Pleadings (Doc. 11) is **DENIED**. To the extent that Plaintiff's Motion seeks an immediate award of benefits, it is **DENIED**. To the extent counsel seeks an immediate award of attorney's fees, that request is **DENIED** without prejudice to renew upon the filing of an appropriate application for such fees.

-24-

A judgment consistent with this Memorandum Opinion and
Order will be entered contemporaneously herewith.

This the 25th day of August, 2016.

_____
United States District Judge